My name is Joe Evans. I'm the attorney for Golden Valley Electric Association in this matter. And thank you for coming to Fairbanks. We're happy to be here. If I may, I think any discussion of this matter has to start with the administrative subpoena that was issued in this matter. And that's ER-14. And the scope of that subpoena, this was not simply seeking the power consumption records. The subpoena, even though the government says it's not a John Doe subpoena, it is a John Doe subpoena. There are no names identified in there. There are three addresses, which of course have been blacked out for purposes of the record here. But the subpoena seeks customer information including full name, address, phone number, account information for the customer, method of payment, credit card, credit, debit card, cash check, with credit card number and account information to include power consumption records, dates of service, initiated and terminated for a 14-month period. Golden Valley's position on this is that this is overly broad, that it's not focused. I mean, if you look at the application made by the agent in this matter on page ER-12, the agent says that the records are relevant to his ongoing investigation, that he suspects some individuals of these residents may be involved in the manufacture and distribution of controlled substances. If the issue is power consumption records, then ask for power consumption records. But that's not what they ask for. They ask for not only the power consumption records, but all of the information that Golden Valley's members had given to Golden Valley in order to obtain electrical service. But they're obviously asking for the information beyond power consumption to figure out, well, who's paying for the power, which will lead them to narrow the search a little bit. Well, there may be four or five people in the house, but if somebody is paying for that power and it turns out to be enough power to suggest strongly that it's a grow house, they're probably going to want to focus on that individual more than on the others. I mean, I can see what they're after. No, Your Honor, I don't disagree with seeing what they're after. But Golden Valley's concern is that there is this information that's been turned over to Golden Valley. If I want to get power from Golden Valley, I don't just go down and give them my name, address, phone number. I also have to give them information if I want to have a direct withdrawal from my checking account, if I want to use a Visa card, if I want to use a debit card. I have to give them all of that information, too. And I believe the government's position in this is, well, once I have disclosed that information to Golden Valley, I no longer have a reasonable expectation of privacy in that information because I voluntarily disclosed it. Well, it's not a voluntary disclosure, Your Honors. If I want the power, I got to do it. If I go to Golden Valley and say name, address, phone number, and I'll take care of the payment, but it's none of your business where I bank, it's none of your business how I'm going to pay this bill, I don't get service. I have a question, counsel. It sounds like you're arguing the position of Golden Valley's customers as opposed to Golden Valley. Who are you representing here? I'm representing Golden Valley, Your Honor, but I believe that because this is an association, I believe we have standing to argue. No, I wasn't thinking so much of a standing context, but rather it sounds like you're asserting privacy interests in effect of the customers. In fact, the subpoena was issued to Golden Valley. Yes, Your Honor, but Golden Valley, I would respectfully submit, has a contract with its customers based upon our policies and procedures that says the information you give to us is confidential and will not be disclosed. Do you have any case law that results from an 876 subpoena that would sustain that position? On that issue, Your Honor, I believe I'm swimming upstream a bit. I think you are a little bit, and how do you deal with, for example, the Supreme Court's opinion in Church of Scientology? Doesn't that just open up floodgates as far as this kind of thing? I mean, that case involved a whole lot of confidential information of a whole lot of sometimes very famous people, and the court upheld that, the Supreme Court did. Where do we go with this? Well, Your Honor, where I think we go with this is I believe that Justice Sotomayor, in the U.S. v. Jones case recently in her concurring opinion, said that we may want to take, and I'm paraphrasing here, and I hope I do justice to it, but we may want to reconsider that this argument about no reasonable expectation of privacy for information voluntarily disclosed to third parties, that we may want to take a second look at that. And that may ultimately prevail, but of course, you know, the majority in that case went based on some 19th century property law rather than on the privacy concept that Justice Alito and Justice Sotomayor felt compelling. You know, I'm empathetic to your position as far as what a customer might feel, but here we're trying to adjudicate the legitimacy of the subpoena, whether it's still moot and so on, or whether it's moot, and I just don't see how you get around Church of Scientology. If you can help me, I'd sure like to know. Well, Your Honor, I have to admit that's a bit of a stumbling block for me. On the other hand, I do think that what Justice Sotomayor said and what some of the dissents that I cited, and I know they're dissents, and I always, whenever I do these briefs, when I use dissents in law review articles, I know that I'm on the cusp here. I'm trying to say that I think it's time to reexamine what I think the courts have done in the last 100 years with the administrative subpoenas, and I know the deference that's given to them, and I know, of course, in 1970 when the war on drugs was started, I know where folks wanted to go with that. But I think in this case, when you look at what was asked for here, I believe, Your Honor, to address Judge Smith, your question, I do think Golden Valley has the obligation to assert its members' privacy rights. And, counsel, I don't question your good faith intention to do so. I'm saying that the Court of Scientology is the Supreme Court opinion. We're bound by it. We can't change that. So, you know, you may want to appeal this or some other case to the Supreme Court, and perhaps Justice Sotomayor will be your champion on a white horse and ride through and change the law. But as it stands right now, I don't see how we can resolve the particular point that you're making in your favor. Do you disagree with that? Well, Your Honor, I disagree with it in the respect that I do believe that the scope, and I understand the Scientology one was broad. It asked for a lot of information, too. But in this case, Your Honor, I truly do believe that the court needs to take a look. Granted, there's that precedent out there, and I understand that. Are you encouraging us to be a rogue court? No, Your Honor, I would not encourage that. I wouldn't think so. What I'm asking this court to do, Your Honor, is be on the cutting edge of what needs to be done. Oh, okay. But not to be a rogue court. Let me ask you this. What explicit guarantees, if any, did Golden Valley give to its members that this information would be kept confidential? Your Honor, I think that's specifically, I don't know the individuals in this matter. I don't know, for example, what forms they signed. And what I do know is that it is my understanding that when individuals come in and sign up for power, that they are made aware of Golden Valley's internal policy, that their records and information given to Golden Valley is confidential. When you say that's your understanding, is there something in the record that tells us precisely what Golden Valley says to its customers? Your Honor, other than, there is not. Other than at the record ER-09, where I cite the policy, I cannot represent that I know exactly what the members are told when they fill out their power application. And the reason I ask the question is I don't know either, and I couldn't find it. It's not in the record, Your Honor. And depending on how this case comes out, if it turns out that we affirm the subpoena, Golden Valley may wish to consider telling its customers, listen, any information that you provide us of the following sort, we will have to hand over pursuant to a valid subpoena. So at least they know what's up. If the court were to not want to be on the cutting edge, as I have requested, we would actually put, I'm sure, a disclaimer on there. Whatever you put on this form may be subject at some point to a properly issued subpoena or a court process, as opposed to what we have in our policy now. Actually, your policy memo itself, looking at ER-09, you say that member records and all information concerning the state of association members and blah, blah, blah is the discussion or distribution of this information to unauthorized parties is strictly prohibited, and then B, all court-ordered requests for member information shall be forwarded to the appropriate business unit vice president. It doesn't say it won't be given pursuant to court process. It just simply says information is first going to go to the vice president. It doesn't say anything beyond that, does it? No. What it says is that in that first part that your Honor read, Judge Smith, that you read, said it would be classified as confidential. Then it does the, as you read, talks about the procedures if requests are made. So it at least acknowledges that if there's a compelled by process to produce documents of this information, it's going to first go to the vice president. It doesn't say you won't produce them. No, it does not. It does not say he will hold them. Right. Although, I mean, if I'm being hyper-technical, you've not quite warned them that an administrative subpoena will be able to compel it. It says court-ordered process. Now, in this case, if you lose, you're probably going to get what would qualify as a court-ordered process. Ultimately, when we're finished here, yes, we will have a court-ordered process. That's for sure. Okay. I got it. Your Honor, if I may, I think I've got about four minutes. Could I reserve that? Yes, of course. Let's hear from the other side. Good morning. My name is Frank Russo. I represent the United States in this appeal and brought the initial petition to enforce the EA subpoena. I really only have two points for the court. One pertains to scope of the subpoena at issue here, the complaint about it obtaining a request for financial information. Now, that really wasn't raised below in district court, and that argument evolved on appeal. So when we look at the record below in their response to our petition, there was no argument below that this was somehow burdensome or unreasonable and these records were of unprecedented scope. In fact, obviously, Golden Valley has the burden in the district court to do that. It didn't do it, and I think that ends the issue here, notwithstanding the fact that I think the subpoena at issue is as plain vanilla as it's issued daily across the country. Has Golden Valley conceded that the mootness argument is in itself gone now at this point? Well, I believe the parties have agreed it's not because, as I cited in my brief, there is some precedent for the fact that if the court rules against the United States here, we'd have to give back the record. Sure. So I gather we needn't trouble ourselves with the mootness issue further, right? I agree, and plus this has been a longstanding problem from the DEA's perspective up in Fairbanks that they won't accept administrative subpoenas, although they will accept grand jury subpoenas, which basically the only difference is I would sign a grand jury subpoena and the agent would sign an administrative subpoena. Who won't accept them? Golden Valley Electric. So they're going to decide which subpoenas they'll accept? They do accept subpoenas, but they don't accept administrative subpoenas. I don't think this is going to make the difference to how I think about the case, so don't worry that you're stepping into a hole here. But what advantage is there to the government proceeding in one way or the other, grand jury or administrative proceeding? Well, I think, you know, even just the realities of Alaska and the space in Alaska, our grand jury subpoenas, our grand jury sits in Anchorage, and so it's much easier to issue a subpoena from an agent in Fairbanks who would serve on Golden Valley. So that's the sort of answer. It's a practicality question. Sure. And the only other point I have for the panel is that this privacy issue, I mean, it's obviously not in the record, but Golden Valley does have a privacy section of its website saying we collect your information and we use it for business purposes, and thus the argument is it is business correct. Thank you. Thank you. Mr. Evans? Just briefly, I agree, Judge Smith, the mootness issue is not an issue that I believe is dispositive in this matter, and I would hope that the Court would give us a ruling on this. As the U.S. Attorney has said, Golden Valley has, and I guess one could say maybe wrong-headedly, but I don't believe so, has taken a position with these administrative subpoenas that we challenge them. This is the first time, to my knowledge, and I handle the appellate work. I don't handle the day-to-day work for Golden Valley. This is the first time I'm aware that the U.S. Government has actually pursued the matter to this level. As noted in the record, I think at one point in one of their briefs, they said that in response to Golden Valley's position on other administrative subpoenas that they had used, to coin their phrase, alternative means of obtaining the records, that they saw it. I don't know what that is. I want to be sure I understand. Mr. Evans, are you saying that you are asking that we rule on the mootness issue, or you're not asking? No, Your Honor. I guess what I'm saying is I don't believe this matter is moot. Okay. So everybody's in agreement on that? We don't need to deal with that? That is correct, Your Honor. Sorry, I think I poorly phrased that when I said that. But in conclusion, I believe that this administrative subpoena, I'm not arguing that it's burdensome, meaning that the collection of data that the U.S. Government sought in this took Golden Valley an inordinate amount of time. Ultimately, after the stays were denied, we turned the information over. So we didn't have to hire additional people. It's not burdensome. The issue is the scope, and we believe that it is too broad, and that the Court should seriously consider taking a look at the scope issue and restrict application or use of subpoenas of this broad nature. Thank you very much for your time. Nice arguments on both sides. Thank you. The United States v. Golden Valley Electric Association now submitted for decision.
judges: Goodwin, Fletcher, Smith